DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
By: DAVID J. KENNEDY
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2733
E-mail: david.kennedy2@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* Ann Schweiger, STATE OF NEW YORK *ex rel.* Ann Schweiger, and ANN SCHWEIGER, Individually, : : : : : Plaintiffs, : : : v. : : VISITING NURSE SERVICE OF NEW YORK, : VISITING NURSE SERVICE OF NEW YORK : COMMUNITY HEALTH SERVICES, and : VISITING NURSE SERVICE OF NEW YORK : HOME CARE, : : Defendants. : | 17 Civ. 0900 (PAE) |

------------------------------------------------------------------x

| | |
|---|---|
| UNITED STATES OF AMERICA, : : Plaintiff-Intervenor, : : : v. : : VISITING NURSE SERVICE OF NEW YORK : d/b/a VNS HEALTH, VISITING NURSE SERVICE : OF NEW YORK HOME CARE II d/b/a VISITING : NURSE SERVICE OF NEW YORK HOME CARE, : and VNS HEALTH BEHAVIORAL HEALTH, INC., : : Defendants. : | **COMPLAINT-IN-INTERVENTION OF THE UNITED STATES** |

------------------------------------------------------------------x

The United States of America (the "United States" or the "Government"), by its attorney Damian Williams, United States Attorney for the Southern District of New York, having filed a Notice of Intervention pursuant to 31 U.S.C. §§ 3730(b)(2) and (4), alleges for its Complaint-In-Intervention as follows:

**PRELIMINARY STATEMENT**

1. The Government brings this Complaint-In-Intervention seeking damages and penalties against Defendants Visiting Nurse Service of New York d/b/a VNS Health ("VNS Health"), Visiting Nurse Service of New York Home Care II d/b/a Visiting Nurse Service of New York Home Care, and VNS Health Behavioral Health, Inc. (together, "VNS") under the False Claims Act, 31 U.S.C. §§ 3729 *et seq*. (the "FCA"), and the common law for unjust enrichment. As set forth more fully below, from January 1, 2014, through December 31, 2018 (the "Relevant Period"), VNS submitted or caused to be submitted false claims to Medicaid relating to services provided to patients who participated in VNS's Assertive Community Treatment Program in Far Rockaway, Queens ("VNS Far Rockaway ACT Program").

2. Specifically, during the Relevant Period, VNS submitted or caused to be submitted false claims to Medicaid for monthly payments for 103 individuals (the "Patients") enrolled in the VNS Far Rockaway ACT Program who did not receive the full array of services that VNS was required to provide or for whom VNS did not adequately or timely document the provision of such services in accordance with applicable regulations or guidelines.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the Government's FCA claims pursuant to 31 U.S.C. § 3730(a) and 28 U.S.C. §§ 1331 and 1345, and over the Government's common law claims pursuant to 28 U.S.C. § 1345.

4. This Court may exercise personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a), which provides for nationwide service of process.

5. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) as well as 28 U.S.C. § 1391(b) and (c) because Defendants maintain offices in this District, transact business in this District and because a substantial part of the events giving rise to the claims herein occurred within this District.

## PARTIES

6. Plaintiff is the United States of America and is suing on its own behalf and on behalf of the United States Department of Health and Human Services, and its component agency, the Centers for Medicare and Medicaid Services.

7. Defendant Visiting Nurse Service of New York d/b/a VNS Health is a New York not-for-profit corporation with its principal place of business in New York, New York. VNS Health provides corporate administrative and support services to its affiliate corporations, including Visiting Nurse Service of New York Home Care II d/b/a Visiting Nurse Service of New York Home Care.

8. Defendant VNS Health Behavioral Health, Inc. is a New York not-for-profit corporation with its principal place of business in New York, New York. VNS Health Behavioral Health, Inc. provides outpatient mental health services to children, adolescents, and adults, including underserved individuals with acute and chronic mental illness.

9. Defendant Visiting Nurse Service of New York Home Care II d/b/a Visiting Nurse Service of New York Home Care, a New York not-for-profit corporation with its principal place of business in New York, New York, provides home and community-based skilled nursing, rehabilitation therapy, social work, and other professional services, and serves the five boroughs of New York City, Nassau County, Suffolk County, and Westchester County.

10. Relator Ann Schweiger ("Schweiger") worked as a program assistant for Defendants from approximately September 2008 until June 15, 2015, at its Far Rockaway location in Queens. On or about February 7, 2017, Relator filed a complaint under the *qui tam* provisions of the False Claims Act, as amended, 31 U.S.C. §§ 3729-33, alleging, *inter alia*, that VNS submitted false claims to Medicaid seeking monthly payments for services that VNS was not actually providing to patients at the Far Rockaway location.

**RELEVANT BACKGROUND**

**I.     The False Claims Act**

11. The FCA reflects Congress's objective to "enhance the Government's ability to recover losses as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (1986). As relevant here, the FCA establishes civil penalties and treble damages liability to the United States for an individual or entity that, *inter alia*, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(l)(A).

12. "Knowingly," within the meaning of the FCA, is defined to include reckless disregard of, or deliberate indifference to, the truth or falsity of information. *Id.* § 3729(b)(l). An "obligation," under the statute, includes the "retention of any overpayment." *Id.* § 3729(b)(3).

13. In addition to treble damages, the FCA also provides for assessment of a civil penalty for each violation or each false claim.

## II. Medicaid and the Assertive Community Treatment Program

### a. The Medicaid Program

14. Pursuant to the provisions of Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, the Medicaid program was established in 1965 as a joint federal and state program created to provide financial assistance to individuals with low incomes to enable them to receive medical care. Under Medicaid, each state establishes its own eligibility standards, benefit packages, payment rates, and program administration in accordance with certain federal statutory and regulatory requirements. The state directly pays health care plans or providers for services rendered to Medicaid recipients, with the state obtaining the federal share of the Medicaid payment from accounts that draw on the United States Treasury. *See* 42 C.F.R. §§ 430.0 *et seq*.

15. In New York, Medicaid is administered at the state level by the New York State Department of Health ("DOH"). *See* N.Y. Pub. Health Law § 201(l)(v).

### b. The Assertive Community Treatment Program

16. The Assertive Community Treatment Program (the "ACT Program") is a Medicaid-funded program supervised and regulated by the New York State Office of Mental Health ("OMH") that is designed to deliver a full range of clinical treatment and care and rehabilitation, case management, and support services to individuals who have been diagnosed with a serious mental illness and whose needs have not been well met by more traditional service delivery approaches.

17. OMH currently defines the objectives and approach of the ACT Program as follows:

> The purpose of Assertive Community Treatment (ACT) is to deliver comprehensive and effective services to individuals who are diagnosed

5

> with SMI [serious mental illness] and whose needs have not been well met by more traditional service delivery approaches.
>
> ACT is grounded in a recovery-oriented practice and provides an integrated set of evidence-based treatment, rehabilitation, case management, and support services delivered by a mobile, multidisciplinary behavioral health treatment team. ACT supports individual recovery through a highly individualized approach that provides individuals with the tools to obtain and maintain housing, employment, relationships, and relief from symptoms and medication side effects. The nature and intensity of ACT services are developed through the person-centered service planning process and adjusted through the process of daily team meetings.

*See* https://omh.ny.gov/omhweb/act/act-program-guidelines.pdf . These guidelines were promulgated in 2023.

18. DOH reimburses ACT Program service providers on a capitated basis, meaning that for each provider's patient that is enrolled in the ACT Program, a provider will receive a monthly payment that may be adjusted based on whether the individual received full, partial, or inpatient services that month. *See* N.Y.C.R.R. Title 14, § 508.5(c). In order to receive such payments, VNS, as a certified ACT Program provider, must comply with certain regulations promulgated by OMH, as well as ACT Program guidelines, and their own contractual agreements with OMH.

19. Under New York law, an ACT Program provider is eligible for reimbursement only to the extent that the services identified in a patient's treatment plan are consistent with the needs of the patient, which may change over time, and only to the extent actually provided:

> Reimbursement shall be made only for services identified and provided in accordance with an individual's treatment plan. The treatment plan shall develop, evaluate and revise, as needed, an individual's course of treatment based on the client's diagnosis, expressed desires, behavioral strengths and weaknesses, problems and service needs.

N.Y.C.R.R. Title 14, § 508.5(b)(8).

20. The 2007 ACT Program Guidelines, which were the guidelines in place during the Relevant Period, set forth the types of services provided through the ACT Program, including:

> The services provided by ACT include a full range of clinical treatment, psychosocial rehabilitation, and community support services designed to promote recovery by improving psychiatric symptoms, preventing relapse, teaching skills, providing direct assistance and securing community resources necessary for successful functioning in work, school, home and social relationships.

(*See* Exhibit A, 2007 ACT Guidelines, at 3). Specific services included immediate needs assessments, follow-up assessments, plans for crisis or relapse, contacts from VNS personnel, monthly psychiatric consultations, progress notes, alcohol and drug screenings, and other services.

22. VNS's contract with OMH expressly provided that, to be eligible for payment, VNS must comply with the specific instructions applicable to the community health program that it agreed to administer.

21. ***Intake Forms and Initial Assessments***. The 2007 ACT Program Guidelines stated that an admission decision is to be made within seven consecutive days of the receipt of the initial referral of the patient to an ACT provider, such as VNS, unless the local municipality indicates otherwise, and that upon the decision to admit, a screening and admission note shall be written, which shall include the reason for the referral, immediate clinical and other service needs for the patient to attain or maintain stability (the "Immediate Needs Assessment"), and the admission diagnos(e)s. (*See* Exhibit A, at Section 4.4.3-4.)

22. ***Immediate Needs Assessments***. The Immediate Needs Assessment included a plan to address the patient's needs with regard to "1) safety/dangerousness; 2) food; 3) clothing;

4) shelter; and 5) medical needs." (*See* Exhibit A, at Section 4.10.3.) As stated above, this assessment must be completed with 7 days of the receipt of a referral. *Id.*

23. ***Comprehensive Assessments*.** The 2007 ACT Program Guidelines required that a Comprehensive Assessment must be completed within 30 days of admission, must contain information concerning, *inter alia,* the patient's: psychiatric history, deficits and strengths, substance abuse, and goals. (*See* Exhibit A, at Section 4.10.4-6.) Further, this assessment must be reviewed and updated every six months. *Id.*

24. ***Case Records.*** The 2007 ACT Program Guidelines required the maintenance of a case record for each patient, to include among other things patient identifying information and history, service plan, medication information, and dated progress notes. (*See* Exhibit A, at Section 4.11.).

25. ***Progress Notes*.** The 2007 ACT Program Guidelines obligated the members of the patient's service team to provide a minimum of six (6) visits per month, three (3) of which may be collateral (in other words, with family, friends, landlords, or employers of the patient, where consistent with the service plan). (*See* Exhibit A, at Section 4.6.2.) These visits, meetings, or contacts would typically be documented in progress notes placed in the patient's file. (*See* Exhibit A, at Section 4.11.)

26. ***Psychiatric Visits*.** The 2007 ACT Program Guidelines stated that certain psychiatric services must be provided to the patient, specifically that the psychiatrist complete an initial assessment visit to the patient in the community and quarterly community visits thereafter. Section 4.6 further required that if the patient will not come to the ACT office, the psychiatrist or psychiatric nurse provider "must provide at least monthly services or as clinically indicated for that individual in the community." (*See* Exhibit A, at 4.6.3.)

27. The 2007 ACT Program Guidelines provided that patients had "the right to a person-centered, individualized service plan which they form in partnership with the provider." (*See* Exhibit A, at Section 4.15.2.) Compliance with the 2007 ACT Program Guidelines would help secure these rights.

28. Section 5.1 of the 2007 ACT Program Guidelines defined certain terms relating to the provision of services under the ACT Program.

**FACTUAL ALLEGATIONS**

29. During the Relevant Period, VNS repeatedly failed to provide or document essential services to the Patients — a vulnerable population with mental illness — in at least five major areas. Specifically, VNS repeatedly: (1) failed to complete intake forms and/or conduct initial assessments, (2) failed to complete Immediate Needs Assessments, (3) failed to complete comprehensive assessments; (4) failed to complete service plans, (5) failed to provide and/or record monthly psychiatric visits, and (6) failed to record progress notes.

30. ***Intake Forms and Initial Assessments***. During the Relevant Period, VNS failed to comply with the applicable requirements concerning intake forms and initial assessments, which record necessary background information about the patient, inform subsequent treatment, and set a baseline for improvement while the patient was in the program. Specifically, VNS repeatedly failed to: complete intake forms and/or initial assessments for patients enrolled in the VNS Far Rockaway ACT Program; failed to complete intake forms and/or initial assessments in a timely manner; and/or failed to provide the necessary supervisory review and approval of intake forms and/or initial assessments. For example, for one patient who entered the ACT Program on or about November 25, 2015 ("Patient 1"), VNS failed to complete the review and

approval of Patient 1's ACT Plan until May 2016. Nevertheless, VNS improperly received over $9,650 in capitation payments from Medicaid for this patient for that time period.

31. ***Immediate Needs Assessments***. During the Relevant Period, VNS failed to comply with the applicable requirements concerning Immediate Needs Assessments, which are used to determine patient needs as to safety/dangerousness, food, clothing, shelter, and medical needs. During the Relevant Period, in multiple instances, VNS failed to complete Immediate Needs Assessments for patients enrolled in the VNS Far Rockaway ACT Program, failed to complete Immediate Needs Assessments in a timely manner, and/or failed to provide the necessary supervisory review and approval of immediate needs assessments. For example, for one patient who entered the program on or about May 29, 2014 ("Patient 2"), VNS either failed to document or conduct an Immediate Needs Assessment. Nevertheless, VNS improperly received $1,591 in capitation payments from Medicaid for this patient for that month.

32. ***Comprehensive Assessments***. During the Relevant Period, VNS failed to comply with the applicable requirements concerning comprehensive assessments, which create a baseline needed to provide services and are updated to reflect the patient's changing needs over time. Specifically, VNS repeatedly failed to complete comprehensive assessments for patients enrolled in the VNS Far Rockaway ACT Program, failed to complete comprehensive assessments in a timely manner, and/or failed to provide the necessary supervisory review and approval of comprehensive assessments. For example, for one patient who entered the program on or about September 13, 2010 ("Patient 3"), there is a three-month delay between the date the Comprehensive Assessment was supposedly conducted (March 2015) and the date the assessment was recorded, reviewed, and approved (June 2015). Nevertheless, VNS improperly received $4,827 in capitation payments from Medicaid for this patient for that time period.

33. ***Service Plan***. During the Relevant Period, VNS failed to comply with the applicable requirements concerning service plans, which set forth specific objectives and planned services necessary to facilitate the achievement of the patient's recovery goals. In multiple instances, VNS failed to complete service plans for patients enrolled in the VNS Far Rockaway ACT Program, failed to complete service plans in a timely manner, and/or failed to provide the necessary supervisory review and approval of service plans. For example, for one patient who entered the program on or about July 23, 2014 ("Patient 4"), there is a seven-month delay between the date that the service plan was developed (January 2017) and the date the plan was recorded, reviewed, and approved (August 2017). Nevertheless, VNS improperly received over $12,800 in capitation payments from Medicaid for this patient for that time period.

34. ***Psychiatric Visits.*** During the Relevant Period, VNS failed to comply with the applicable requirements concerning psychiatric visits, which were used to evaluate the progress of patients in addressing the symptoms of their mental illness, and provide them with guidance in managing these symptoms. Specifically, in multiple instances, VNS failed to document psychiatric visits for patients enrolled in the VNS Far Rockaway ACT Program. For example, for one patient who entered the program on or about April 21, 2004 ("Patient 5"), VNS failed to provide and/or record a monthly psychiatric visit in October 2013, November 2014, April 2015, June 2015, July 2015, April 2016, June 2016, July 2016, and September 2016. Nevertheless, VNS improperly received over $13,600 in capitation payments from Medicaid for this patient for those months.

35. ***Progress Notes***. During the Relevant Period, VNS failed to comply with the applicable requirements concerning progress notes, which document service contacts and attempted contacts, progress or lack of progress toward goals, and significant events.

Specifically, in multiple instances, VNS failed to record progress notes for patients enrolled in the VNS Far Rockaway ACT Program until several days or even weeks after the contact with the patient. In addition, VNS sought and received payment at the full monthly level even though, based on the progress notes, VNS was entitled only to partial payment based on the number of documented contacts with the patient. For example, for one patient who entered the program on or about May 16, 2013 ("Patient 6"), VNS recorded weekly progress reports over two weeks late on multiple occasions, in November 2014 (two and a half weeks late), June 2015 (almost three weeks late), January 2017 (two and a half weeks late), February 2017 (two and a half weeks late), and June 2017 (two and a half weeks late). Nevertheless, VNS improperly received between $791 and $1,826 in capitation payments from Medicaid for this patient for each month at issue.

## FIRST CLAIM

**Violations of the False Claims Act: Presenting False Claims for Payment**

**(31 U.S.C. § 3729(a)(l)(A))**

36. The United States incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

37. The United States seeks relief against Defendants under 31 U.S.C. § 3729(a)(l)(A).

38. Through the acts set forth above, Defendants knowingly, or acting with deliberate ignorance or reckless disregard for the truth, presented, or caused to be presented, false or fraudulent claims to Medicaid for capitation payments for the Patients enrolled in the VNS Far Rockaway ACT Program.

39. The Government made capitation payments to Defendants under the Medicaid program because of the false or fraudulent claims.

40. By reason of these false or fraudulent claims, the Government has sustained damages in a substantial amount to be determined at trial and is entitled to treble damages plus a civil penalty for each violation.

## SECOND CLAIM

### Unjust Enrichment

41. The United States incorporates by reference each of the preceding paragraphs as if fully set forth herein.

42. Through the acts set forth above, Defendants have received ACT Program monthly capitation payments to which they were not entitled and therefore were unjustly enriched. The circumstances of these payments are such that, in equity and good conscience, Defendants should not retain those payments, the amount of which is to be determined at trial.

WHEREFORE, the United States respectfully requests judgment to be entered in its favor against Defendants as follows:

a. On the First Count (violation of the FCA 31 U.S.C. § 3729(a)(1)(A)), a judgment against Defendants for treble damages and civil penalties to the maximum amount allowed by law; and

b. On the Second Claim (Unjust Enrichment), a judgment against Defendants for damages to the extent allowed by law.

c. Granting the United States costs and such further relief as the Court may deem proper.

Dated:        June _17___, 2024
                New York, New York

                                            DAMIAN WILLIAMS
                                            United States Attorney for the
                                            Southern District of New York

                            BY:    __\s\ David J. Kennedy_____
                                            DAVID J. KENNEDY
                                            Assistant United States Attorney
                                            86 Chambers Street, 3rd Floor
                                            New York, New York 10007
                                            Telephone: (212) 637-2733
                                            Facsimile: (212) 637-0033
                                            E-mail: david.kennedy2@usdoj.gov